No. 13,032.

GOTCH *v.* K. & B. PACKING AND PROVISION COMPANY.
(25 P. [2d] 719)

Decided September 18, 1933.

Mr. Ivor O. Wingren, Mr. Earle F. Wingren, Mr. G. Walter Bowman, for plaintiff in error.

Mr. Charles Rosenbaum, for defendant in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

John Gotch sued the K. and B. Packing and Provision Company for damages for the death of his wife. The trial court granted the company's motion for a nonsuit and dismissed the action. Gotch seeks a reversal of the judgment.

The company operates a slaughter house and packing plant in Denver. Its building is large. In the southwest corner on the ground floor is the office, and in the southeast corner is a door between the loading platform and the shipping room. At the north end of the shipping room is a door opening into the slaughter room. On the day of the accident that door was open. Immediately to the east of that door is a freight elevator shaft that extends from the basement to the second floor. The elevator gate did not work automatically, as required by the

city ordinance, but had to be raised and lowered by hand. On the day of the accident the elevator was on the second floor and the elevator gate was up, leaving the shaft unguarded on the ground floor.

Three or four times a week for about four years Mrs. Gotch had taken lunches to their son, Mike. She would deliver them to him in the slaughter room, where he worked as a butcher. On December 15, 1930, Mrs. Gotch brought a lunch for her son. She passed through the doorway from the platform into the shipping room, and proceeded toward the slaughter room, but instead of entering the open doorway to the slaughter room, she, for some unexplained reason, stepped into the unguarded elevator shaft. She fell down the shaft to the basement and was killed.

1. Trespassers and mere licensees take the premises as they find them. The owner of premises is not under the same obligation to trespassers and licensees as he is to those who are upon the premises by his express or implied invitation. To the latter he owes a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed defects. To the former he owes no such duty, but as to them he is under obligation not wilfully and intentionally to injure them, or, as it is sometimes expressed, not to injure them after becoming aware of their presence. Of course, he must exercise reasonable care, after becoming aware of their presence, not to injure them by any affirmative act or force set in motion. *Averch v. Johnston,* 90 Colo. 321, 9 P. (2d) 291; *Windsor Reservoir & Canal Co. v. Smith,* 82 Colo. 497, 261 Pac. 872; *Reardon v. Thompson,* 149 Mass. 267, 21 N. E. 369; *Vaughan v. Transit Development Co.,* 222 N. Y. 79, 118 N. E. 219; *Fitzpatrick v. Cumberland Glass Mfg. Co.,* 61 N. J. L. 378, 39 Atl. 675; *Gibson, Parish & Co. v. Sziepienski,* 37 Ill. App. 601; *Dixon v. Swift,* 98 Me. 207, 56 Atl. 761; *Indian Refining Co. v. Mobley,* 134 Ky. 822, 121 S. W. 657; *Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 Atl. 973; *Muench v. Heine-*

*mann,* 119 Wis. 441, 96 N. W. 800; *Lackat v. Lutz,* 94 Ky. 287, 22 S. W. 218; 20 R. C. L. pp. 55, 59, 60; Note, 24 L. R. A. (N. S.) 497.

■■ 2. The city ordinance referred to above does not change the rule. In the absence of such ordinance, it would be for the jury to determine whether or not it was negligence to equip the elevator shaft with gates that did not close automatically. The effect of the ordinance is to take that question away from the jury and make a failure to equip the elevator shaft in the required manner negligence as a matter of law. The ordinance does not confer a right of action for injuries sustained by trespassers or by mere licensees.

■ 3. As there was no evidence of a violation of any duty owing to a trespasser or a mere licensee, the controlling question is this: Was Mrs. Gotch an invitee, or was she a trespasser or a mere licensee? If she was an invitee, the plaintiff, in view of the evidence, was entitled to have the case submitted to the jury, and the judgment is wrong and should be reversed; if she was a trespasser or a mere licensee, the judgment is right and should be affirmed.

There is no evidence that any officer or agent of the company knew of Mrs. Gotch's custom to take lunches to her son and deliver them to him in the slaughter room; but if we assume that they must have known because her visits extended over a period of several years, there was merely an implied license by reason of the fact that they did not forbid her to enter the shipping room or the slaughter room. There was no invitation, either express or implied, for her to go there. She was not an employee or a customer. She had no business to transact with the company. The purpose of her visit was of no interest or advantage to the company, but was for the personal convenience of her son, to save him from going home or to some restaurant for his lunch. He had a half-hour for lunch, and was not required to remain upon the premises during that time. Indeed, his lunch was brought to him

only three or four times a week. In such circumstances Mrs. Gotch, if not indeed a trespasser, was a mere licensee. 20 R. C. L. p. 69; 2 Cooley, Torts (3d Ed.), p. 1265; *Watson v. Manitou & Pikes Peak Ry. Co.*, 41 Colo. 138, 92 Pac. 17; *Hayko v. Colorado & Utah Coal Co.*, 77 Colo. 143, 235 Pac. 373. In *Fitzpatrick v. Cumberland Glass Mfg. Co., supra,* a boy was accustomed to carry dinner to his father at the company's works. In doing so on one occasion he received an injury while on the premises. The court said: "* * * the defendant company was under no obligation to keep its premises safe for the use of the plaintiff. He was not there *by the in-vitation* of the company, express or implied. He was there about a matter in which the company had no concern, i. e., the bringing of his father's dinner, and was saved from being a mere trespasser only by the fact that the company *permitted* him to come upon its premises for that purpose. He was a mere licensee." In *Gibson, Parish & Co. v. Sziepienski, supra,* a father went to the defendant's factory to take a dinner to his son, who worked there. Entering a passageway that led to an elevator shaft, he fell down the shaft, which was insufficiently guarded, and was killed. He was held to be a licensee. A milkman who, according to his custom, went to a factory to leave milk for the personal use of the employees, was held, in *Muench v. Heinemann, supra,* to be a mere licensee and not entitled to recover for injuries sustained because of a defect in an elevator. In *Dixon v. Swift, supra,* one who went upon the premises of another to deliver to one of the latter's employees a message having no relation to the business conducted there, and to make social calls on several other employees, was held to be a licensee and not entitled to recover for an injury sustained while on the premises. So, also, one who, with the permission of the owner of a manufacturing plant, went about the premises to solicit insurance from employees, was held, in *Indian Refining Co. v. Mobley, supra,* to be a licensee and therefore not entitled to

recover for injuries sustained while on the premises. And see *Benson v. Baltimore Traction Co., supra; Lackat v. Lutz, supra; Berlin Mills Co. v. Croteau*, 32 C. C. A. 126, 88 Fed. 860. The foregoing are sufficient to illustrate the application of the rule under consideration.

Counsel for the plaintiff rely upon *Bustillos v. Southwestern Portland Cement Co.* (Tex. Com. of App.), 211 S. W. 929, to sustain their contention. But that case differs in some important particulars from the case at bar. There, a child 15 years old entered the premises for the purpose of carrying a lunch to one of the employees. While passing along a footpath, he slipped and fell into a burning pit. The premises were not fenced and, with the defendant's knowledge and consent, the footpath was constantly used by pedestrians, both old and young. Children were permitted to come to the plant daily for the purpose of bringing lunch to the employees, many of whom, *on account of their hours of work, did not have time to leave the plant at the noon hour*. It was held that these facts were sufficient to raise the issue of an implied invitation to the child to come upon the premises upon the errand in which he was engaged. The court said: "The defendant permitted deceased and other children to come upon its premises and knew they traveled the narrow path bordering the pit. The slightest regard for their safety would have suggested the danger in passing so near a pit beneath the surface of which was concealed a burning mass into which they might accidentally slip and fall. Under the facts alleged in the petition, defendant will not be permitted to say that deceased was a mere licensee to whom it owed no duty and for whose safety it was under no obligation to make provision." True, the court also remarked that the child's errand "was not only for a purpose connected with the business in which defendant was engaged, but it was in the interest and for the benefit of defendant through a necessary service to one of its employes." Whether or not that statement correctly described the errand of the boy, we hold that

under the facts disclosed by the record in the present case, it does not correctly describe the errand of Mrs. Gotch.

The fact that Mrs. Gotch's habit of carrying lunches to her son several times a week extended over a period of about four years, does not change her status from that of trespasser or licensee to that of invitee. As we have said, there is no evidence that any of the company's officers or agents had knowledge of any of Mrs. Gotch's visits; but assuming that they had such knowledge, the most that can be said is that during that time she was not denied admission to either the shipping room or the slaughter room; in other words, that there was a mere passive acquiescence in her repeated visits in circumstances that would not justify an inference that Mrs. Gotch entered the premises at any time upon the express or implied invitation of the company.

The judgment of the district court is right and is affirmed.