2012 COA 77

SW, a minor by and through his parents and next friends, David and Rhonda WACKER; David Wacker; and Rhonda Wacker, Plaintiffs–Appellants,

v.

TOWERS BOAT CLUB, INC., Defendant–Appellee.

No. 11CA0935.

Colorado Court of Appeals, Div. III.

April 26, 2012.

Purvis Gray, LLP, John Purvis, Boulder, Colorado, for Plaintiffs–Appellants.

Senter Goldfarb & Rice, L.L.C., Arthur Kutzer, Joel Palmer, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge TERRY.

¶ 1 As an issue of first impression, we address whether, under the premises liability statute, section 13–21–115, C.R.S.2011, a child licensee may assert a claim based on the attractive nuisance doctrine. We conclude that a child licensee may not maintain such a claim.

¶ 2 Plaintiffs, SW, David Wacker, and Rhonda Wacker, appeal the trial court's summary judgment in favor of defendant, Towers Boat Club, Inc. (landowner). We affirm.

I.   Background

¶ 3 On August 2, 2008, SW, then eleven years old, attended a social gathering at Pou-

dre Reservoir Number 6. While he was playing on an inflatable structure rented by landowner for the gathering, wind lifted the structure into the air and SW fell to the ground, sustaining severe injuries. Plaintiffs eventually settled the claims that they asserted against other defendants.

¶ 4 Plaintiffs asserted two claims against landowner, one for negligence and the other under Colorado's premises liability statute, section 13–21–115. Landowner moved for summary judgment. The trial court granted the motion as to plaintiffs' negligence and premises liability claims. However, the court construed the complaint to include a claim for attractive nuisance, and denied summary judgment as to that claim.

¶ 5 Landowner moved for reconsideration, arguing that the attractive nuisance doctrine was inapplicable to SW. The court agreed and dismissed plaintiffs' attractive nuisance claim. Plaintiffs appeal only the trial court's dismissal of the attractive nuisance claim.

## II. Standard of Review

¶ 6 We review de novo an order granting a motion for summary judgment. *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1218 (Colo.2002). Summary judgment is appropriate only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* The nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts, and all doubts are resolved against the moving party. *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 865 (Colo.2005).

## III. Discussion

¶ 7 We are not persuaded by plaintiffs' contention that the trial court erred in granting landowner's motion for summary judgment.

¶ 8 Section 13–21–115(3), C.R.S.2011, classifies entrants upon the land of another as trespassers, licensees, or invitees. As relevant here, that subsection outlines the respective duties that a landowner owes to each class, as follows:

(3)(a) A trespasser may recover only for damages willfully or deliberately caused by the landowner.

(b) A licensee may recover only for damages caused:

(I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew; or

(II) By the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew.

(c)(I) ... [A]n invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known.

§ 13–21–115(3).

¶ 9 The trial court ruled that SW was a licensee, and plaintiffs do not contest that ruling on appeal. Instead, they argue that the trial court erred in ruling that, because SW was not a trespassing child who was enticed onto the property by an attractive nuisance, he could not assert a claim for attractive nuisance. Plaintiffs contend this ruling contravenes the supreme court's holding in *Gallegos v. Phipps*, 779 P.2d 856, 859 (Colo.1989). We disagree.

### A. Attractive Nuisance Doctrine

¶ 10 Plaintiffs argue that no Colorado appellate decision expressly holds that the attractive nuisance doctrine is limited to trespassing children. They contend that the Colorado decisions addressing attractive nuisance all involve factual scenarios in which a child was trespassing, and thus the issue of whether the doctrine can apply to licensees such as SW has not previously been decided. They further contend that, although SW has been determined to be a licensee, he should be able to invoke the attractive nuisance doctrine.

¶ 11 We disagree that existing Colorado decisions, when construed together with the premises liability statute, leave any doubt about the application of the attractive nuisance doctrine, and conclude the doctrine

unequivocally applies only to children enticed by an attractive nuisance *to trespass* on another's property. Thus, the doctrine cannot be applied to SW.

### 1. History of Attractive Nuisance Doctrine in Colorado

¶ 12 The attractive nuisance doctrine developed to provide legal relief to certain trespassing children who otherwise would be barred from recovery because of Colorado's rule that a landowner owes no duty to make or keep premises safe for a trespasser. *See Hayko v. Colorado & Utah Coal Co.*, 77 Colo. 143, 147, 235 P. 373, 374 (1925), *overruled in part by Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971), *superseded by* § 13–21–115 *as noted in Gallegos*, 779 P.2d at 861; *see also* John W. Grund & J. Kent Miller, 7 Colo. Prac., Personal Injury Practice—Torts and Insurance § 19.5, at 314–15 (2d ed. 2000).

¶ 13 The doctrine has since been modified, both by ensuing case law and by statute. Because the history of attractive nuisance doctrine is tied to the general history of premises liability law in Colorado, we briefly summarize the unique history of Colorado premises liability law.

¶ 14 The supreme court described some of that history in *Gallegos*, as follows:

Until 1971, the law in Colorado governing landowner[s'] liability followed the common law's emphasis on whether the injured party was an invitee, licensee, or trespasser. *See [Mile High Fence*, 175 Colo. at 541, 489 P.2d at 311]; *Husser v. School Dist. No. 11*, 159 Colo. 590, 593, 413 P.2d 906, 908 (1966). Under the common law, the landowner's liability depended exclusively upon the injured party's status. For example, a landowner had no duty to make or keep his premises safe for a trespasser. *Staley v. Security Athletic Ass'n*, 152 Colo. 19, 21, 380 P.2d 53, 54 (1963). If, however, the person was a licensee, the owner had a duty not to willfully or wantonly injure the person. *Gotch v. K & B Packing & Provision Co.*, 93 Colo. 276, 278, 25 P.2d 719, 720 (1933), *overruled [by Mile High Fence*, 175 Colo. 537, 489 P.2d 308]. An even higher standard was owed

if the person was an invitee; where an invitee was upon the owner's land, the owner had a duty to have the land in a reasonably safe condition and to warn of concealed defects that might have been discovered in the exercise of reasonable care. *Id.* at 278, 25 P.2d at 720.

In 1971, Colorado's common-law scheme governing landowner's liability was abolished by [*Mile High Fence*], 175 Colo. 537, 489 P.2d 308. In [that case], the court held that the classification of one who is upon the property of another as invitee, licensee, or trespasser was no longer dispositive of the landowner's liability or the degree of care owed by the landowner. 175 Colo. at 548, 489 P.2d at 314. Rather, the relevant inquiry was whether the landowner, in the management of the property, acted as a reasonable person in view of the probability or foreseeability of injuries to others. *Id.* A person's status as an invitee, licensee, or trespasser might have some bearing on the issue of liability, but it was only one factor among many to be considered in making the determination. 175 Colo. at 548, 489 P.2d at 314–15.

*Mile High Fence* remained in effect until May 16, 1986, when the General Assembly enacted [the first version of] section 13–21–115 . . ., for the explicit purpose of resurrecting the common-law classification scheme laid to rest by [*Mile High Fence*]. Under the statute, categories analogous to trespasser, licensee, and invitee were established. . . . According to the legislators who sponsored House Bill 1205, which later became section 13–21–115, the common-law categories were reestablished because the reasonable person standard created by *Mile High Fence* led to unpredictable and inequitable results. Of particular concern to legislators was the perception that under *Mile High Fence*, the responsibility for a trespasser's injuries was unfairly shifted from the trespasser to the landowner. Section 13–21–115 was, as one legislator put it, designed so that "responsibility falls upon the trespasser."

*Gallegos*, 779 P.2d at 860–61 (footnotes omitted).

¶ 15 In *Gallegos*, the supreme court concluded that the then-current version of section 13–21–115 was unconstitutional because it created an "inverted hierarchy" of duties, with a higher duty owed to licensees than to invitees. Applying the rational basis test for constitutional scrutiny, the court concluded that this statutory scheme was contrary to well-established common law principles, lacked a rational basis, and was unconstitutional. *Id.* at 862–63.

¶ 16 After *Gallegos* was announced, the General Assembly amended section 13–21–115. As pertinent to our historical analysis, that amended section states:

(1.5) The general assembly hereby finds and declares:

(a) That the provisions of this section were enacted in 1986 to promote a state policy of responsibility by both landowners and those upon the land as well as to assure that the ability of an injured party to recover is correlated with his status as a trespasser, licensee, or invitee;

(b) That these objectives were characterized by the Colorado supreme court as "legitimate governmental interests" in [*Gallegos* ];

(c) That the purpose of amending this section in the 1990 legislative session is to assure that the language of this section effectuates these legitimate governmental interests by imposing on landowners a higher standard of care with respect to an invitee than a licensee, and a higher standard of care with respect to a licensee than a trespasser;

(d) That the purpose of this section is also to create a legal climate which will promote private property rights and commercial enterprise and will foster the availability and affordability of insurance;

(e) That the general assembly recognizes that by amending this section it is not reinstating the common law status categories as they existed immediately prior to [*Mile High Fence,*] but that its purpose is to protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the poli-

cies set forth in paragraphs (a), (c), and (d) of this subsection (1.5).

§ 13–21–115(1.5)(a)–(e).

¶ 17 As part of the reenactment of section 13–21–115, the legislature revived the common law doctrine of attractive nuisance, which had been rendered unnecessary by *Mile High Fence*. *See* Grund and Miller, § 19.5, at 314; *see also Vigil v. Franklin,* 103 P.3d 322, 331 (Colo.2004) (as reenacted in 1990, § 13–21–115(2) "expressly provided for the attractive nuisance doctrine"); *Union Pac. R.R. Co. v. Martin,* 209 P.3d 185, 188 (Colo.2009) (in reenacting § 13–21–115, legislature "specifically singl[ed] out for continued vitality the common law doctrine of attractive nuisance"). *But see Salazar v. City of Sheridan,* 44 Colo.App. 443, 445–46, 618 P.2d 708, 709–10 (1980) (mentioning attractive nuisance claim brought by plaintiff); *Cent. Mut. Ins. Co. v. Wilson,* 533 P.2d 57, 58 (Colo.App. 1975) (not published pursuant to C.A.R. 35(f)) (same).

Subsection (2) states:

In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section. Sections 13–21–111, 13–21–111.5, and 13–21–111.7 shall apply to an action to which this section applies. *This subsection (2) shall not be construed to abrogate the doctrine of attractive nuisance as applied to persons under fourteen years of age.* A person who is at least fourteen years of age but is less than eighteen years of age shall be presumed competent for purposes of the application of this section.

§ 13–21–115(2) (emphasis added).

2. Revival of Attractive Nuisance Doctrine

¶ 18 Plaintiffs contend that the amendment to section 13–21–115(2) changed not just the upper age limit of the children to whom it could be applied, from age eighteen to age fourteen. They contend it also did away with the attractive nuisance doctrine as it had

previously existed in Colorado. In its place, they argue that principles reflected in CJI–Civ. 4th 12:4 (1998) and the Restatement (Second) of Torts §§ 299 and 343B control. We disagree.

¶ 19 The premises liability statute gives no indication that the attractive nuisance doctrine as applied in the publications cited by plaintiffs, or in jurisdictions other than Colorado, is intended to supplant preexisting Colorado precedents. The only logical interpretation of subsection (2)'s incorporation of the attractive nuisance doctrine is that it is to be applied in accordance with preexisting Colorado precedents, to the extent they do not conflict with the provisions of section 13–21–115. *See* Grund & Miller, § 19.5, at 314 (in enacting section 13–21–115, "the legislature expressly revived the attractive nuisance doctrine"); *see also Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo.1997) (legislature "is presumed to be aware of the judicial precedent in an area of law when it legislates in that area"); *State Engineer v. Castle Meadows, Inc.*, 856 P.2d 496, 504 (Colo.1993) (same).

¶ 20 We reject plaintiffs' argument that the provisions of CJI–Civ. 12:4 should guide us in the application of attractive nuisance law. As relevant here, CJI–Civ. 12:4 provides that a plaintiff may recover on a claim for attractive nuisance if, among other things, the plaintiff "(was attracted onto the premises by [an unusual activity being carried on on the premises] [or] [by an unusual condition, other than a natural condition, existing on the premises] ) (or) *(was on the premises with the express or implied consent of the defendant )*" (emphasis added). The italicized language is not consistent with Colorado case law, as discussed herein, and we disapprove it. *See Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo.2009) (pattern jury instructions are not law, not authoritative, and not binding on Colorado courts; they are not to be used if they do not reflect the prevailing law).

¶ 21 The sections of the Restatement cited by plaintiffs do not reflect Colorado law and have not been adopted by Colorado courts, and thus are not binding here. *See Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 79 (Colo.1998). The same is true of plaintiffs' citation to 62 Am.Jur.2d *Premises Liability* § 299. We note that both 62 Am. Jur.2d *Premises Liability* § 299 and the Restatement (Second) of Torts § 343B indicate that Colorado is in the minority of states that require a trespass in order for the attractive nuisance doctrine to apply. *See* Restatement (Second) of Torts § 339 cmt. e (1965) (citing *Esquibel v. City & County of Denver*, 112 Colo. 546, 151 P.2d 757 (1944)); 62 Am.Jur.2d *Premises Liability* § 299 n. 9 (citing *Denver Tramway Corp. v. Callahan*, 112 Colo. 460, 150 P.2d 798 (1944)).

¶ 22 We conclude that historical Colorado attractive nuisance doctrine can easily be harmonized with other provisions of the premises liability statute, and that the attractive nuisance doctrine has been modified by the statute only to the extent that the doctrine can no longer be applied to persons above age fourteen. § 13–21–115(2).

### B. Inapplicability of Attractive Nuisance Doctrine to SW

¶ 23 Plaintiffs contend that the attractive nuisance doctrine should be interpreted to apply to child trespassers, licensees, and invitees. Because such an interpretation would be inconsistent with Colorado law, we disagree.

¶ 24 Colorado courts without exception have held that the attractive nuisance doctrine may be invoked only where an attraction on land "entices children to trespass." *Hayko*, 77 Colo. at 146, 235 P. at 374 ("While he [the owner of the premises] owes a duty to one invited, and some attractive agencies may amount to an invitation to a child, yet such an agency must invite to trespass and not merely after trespass."); *see also Esquibel v. City & County of Denver*, 112 Colo. 546, 549, 151 P.2d 757, 758 (1944) ("[The] doctrine consists in maintaining an attraction which entices to trespass, not merely entices one after he has become a trespasser."), *overruled in part by Mile High Fence*, 175 Colo. 537, 489 P.2d 308; *Denver Tramway Corp. v. Garcia*, 154 Colo. 417, 423, 390 P.2d 952, 956 (1964) (same); *Staley v. Sec. Athletic Ass'n*, 152 Colo. 19, 22–25, 380 P.2d 53, 55 (1963) (same), *overruled in part by Mile High Fence*, 175 Colo. 537, 489 P.2d 308;

*accord Garel v. Jewish Cmty. Centers,* 163 Colo. 110, 112, 428 P.2d 714, 715 (1967) (noting that the *Hayko* rule on attractive nuisance has been "consistently followed" by the Colorado Supreme Court); *Guilfoyle v. Missouri, Kansas & Texas R.R. Co.,* 812 F.2d 1290, 1292 (10th Cir.1987) (attractive nuisance doctrine "imposes a duty of care on landowners to prevent serious harm to trespassing children").

¶ 25 Moreover, contrary to plaintiffs' argument, the supreme court has explicitly stated that "the attractive-nuisance doctrine is only an exception to the general rule limiting the liability of landowners as to [child] *trespassers.*" *Niernberg v. Gavin,* 123 Colo. 1, 3, 224 P.2d 215, 216 (1950) (emphasis added).

¶ 26 Recognizing the continued vitality of that rule is consistent with the legislature's intent. As the supreme court stated in *Gallegos,* by amending the premises liability statute to "re-link a landowner's duty and an injured party's ability to recover damages with the party's status as an invitee, licensee, or trespasser," the legislature intended "that a landowner's liability should once again depend upon the landowner's knowledge of the other person's presence and the reason for the presence on the property." 779 P.2d at 861.

¶ 27 We therefore conclude that the common law doctrine of attractive nuisance applies only to trespassing children.

## C. Equal Protection

¶ 28 Plaintiffs further contend that limiting the application of the attractive nuisance doctrine to child trespassers would result in an "inverted hierarchy" of landowner duties and would thus contravene *Gallegos* and be unconstitutional. We are not persuaded.

¶ 29 Initially, the majority notes our respectful disagreement with the assertion in the special concurrence that we need not reach the plaintiffs' constitutional argument. Plaintiffs in essence assert that, to avoid an equal protection problem, a licensee must *always* receive better treatment in the law than would a trespasser, regardless of the reason for entry on the land, and that is the linchpin of their argument that they are enti-

tled to assert an attractive nuisance claim here. Thus, we conclude that the necessity to analyze the constitutional question is not dispelled by that fact that, as recognized by the special concurrence, plaintiffs cannot establish but one element of an attractive nuisance claim, namely, enticement by an attractive nuisance to trespass.

¶ 30 In Gallegos, the supreme court held that the pre–1990 version of the premises liability statute violated the plaintiff's constitutional equal protection guarantees because it "impose[d] on landowners a higher standard of care with respect to a licensee than an invitee." 779 P.2d at 862. The court held that "[s]uch an inverted hierarchy of duties bears no rational relationship to a legitimate governmental interest," and would deny the plaintiff equal protection of the laws. *Id.* (citing U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25).

¶ 31 In response to *Gallegos,* the General Assembly repealed and reenacted the premises liability statute to impose higher duties on landowners with respect to licensees than to trespassers, and higher still duties with respect to invitees than to trespassers. *Vigil,* 103 P.3d at 326.

¶ 32 Here, in essence, plaintiffs contend that, as applied by the trial court, the attractive nuisance doctrine would violate the constitutional guarantee of equal protection of the laws and thus would be unconstitutional. *See Gallegos,* 779 P.2d at 863. We are not persuaded.

¶ 33 "Because section 13–21–115 does not infringe upon a fundamental right, a suspect class, or a classification triggering an intermediate standard of review, the statute need only have some rational basis in fact and bear a rational relationship to a legitimate governmental interest to be valid." *Gallegos,* 779 P.2d at 860.

¶ 34 Plaintiffs argue that the duty to exercise reasonable care owed by a landowner to trespassing children under the attractive nuisance doctrine is a more expansive, general, and higher standard of care than that owed to child licensees, and that because trespassers should be the least favored of all entrants on land, such a higher standard would bear

no rational relationship to a legitimate governmental interest. As support for this proposition, plaintiffs cite only CJI–Civ. 12:4, which they contend imposes on a landowner a duty to "exercise reasonable care to protect persons like [the] plaintiff from injury." As noted above, this jury instruction is not binding Colorado law, *Krueger*, 205 P.3d at 1154, and plaintiffs have not provided us with any Colorado precedent that would establish that duty of care.

¶ 35 We disagree that the "reasonable care" standard imposed on landowners as to trespassing children under the attractive nuisance doctrine is a higher standard of care than is owed to child invitees under the premises liability statute. Rather, section 13–21–115 sets forth standards of reasonable care applicable to landowners, and those standards of care vary depending on the status of the entrant on land. *Compare* § 13–21–115(3)(b)(I)-(II) (licensee may recover only for damages caused by landowner's *"unreasonable failure* to exercise *reasonable care* with respect to dangers created by the landowner of which landowner actually knew," or *"unreasonable failure* to warn of" described dangers of which landowner actually knew) (emphasis added) *and* § 13–21–115(3)(c)(I)-(II) (invitee may recover for damages caused by a "landowner's *unreasonable failure* to exercise *reasonable care* to protect against dangers of which he actually knew or should have known," except that, as to agricultural or vacant land, invitee may recover for damages "caused by the landowner's *unreasonable failure* to exercise *reasonable care* to protect against dangers of which he actually knew") (emphasis added), *with* § 13–21–115(3)(a) (trespasser may recover only for damages "willfully or deliberately caused by the landowner").

¶ 36 The logical implication of plaintiffs' argument is that, to avoid the "inverted hierarchy" equal protection problem identified in *Gallegos,* invitees and licensees must *always* receive more favorable treatment than trespassers. *See* § 13–21–115(3.5) ("It is the intent of the general assembly in enacting the provisions of subsection (3) of this section that the circumstances under which a licensee may recover include all of the circumstances under which a trespasser could recover and that the circumstances under which an invitee may recover include all of the circumstances under which a trespasser or a licensee could recover.").

¶ 37 However, by incorporating attractive nuisance doctrine in section 13–21–115, the legislature necessarily accepted that doctrine's treatment of young children trespassers, who were enticed onto property by an attractive nuisance, *as invitees. See United Zinc & Chem. Co. v. Britt,* 258 U.S. 268, 275, 42 S.Ct. 299, 66 L.Ed. 615 (1922) ("knowingly to establish and expose . . . something that is certain to attract [children], has the legal effect of an invitation to them"); *see also Denver Tramway Corp. v. Callahan,* 112 Colo. at 464–65, 150 P.2d at 799–800 ("[T]here is no question but that the boy was a trespasser on the private property of defendant, unless he was 'invited' by an 'attractive nuisance,' as recognized by our decisions."); *Kopplekom v. Colorado Cement–Pipe Co.,* 16 Colo.App. 274, 277, 64 P. 1047, 1048 (1901) (citing with approval cases from other jurisdictions that treat children enticed by an attractive nuisance to trespass as invitees); *accord Concrete Constr., Inc. v. Petterson,* 216 So.2d 221, 222 (Fla.1968) (under attractive nuisance doctrine, a "child who enters upon another's property in response to a special attraction is classified as an implied invitee").

¶ 38 In other words, under the attractive nuisance doctrine, children enticed to trespass by an attractive nuisance are treated as invitees, and not as trespassers. Thus, it would not violate equal protection to treat such children more favorably than licensees such as SW if there is a rational basis for doing so. *See Gallegos,* 779 P.2d at 860 (applying rational basis test to classifications under premises liability act).

¶ 39 We conclude that section 13–21–115's liability scheme reflects a rational basis for treating children induced to trespass by an attractive nuisance more favorably than child licensees. As the supreme court recognized in *Gallegos,* the legislature could rationally choose to treat entrants on land differently depending upon their reasons for entry on the land. *Id.* at 861.

¶ 40 We note that the rational basis for disparate treatment of entrants on land is reflected in more than seven decades of Colorado appellate precedent. Even among trespassing children, some received the elevated treatment of invitees, while others did not. A child who was enticed by an attractive nuisance to trespass could recover for ensuing injuries, while a trespassing child already on the premises could not recover, even though the latter child who had already entered on the land might also find a dangerous feature on the land to be enticing *after entry. See Esquibel,* 112 Colo. at 550, 151 P.2d at 759 (where evidence showed that the plaintiff had previously trespassed on land and had used it as a playground before the alleged attractive nuisance appeared there, she could not recover because the attractive nuisance did not entice her to enter the land); *see also Garel,* 163 Colo. at 112, 428 P.2d at 715; *Denver Tramway Corp. v. Garcia,* 154 Colo. at 423, 390 P.2d at 956; *Staley,* 152 Colo. at 23, 380 P.2d at 55; *Hayko,* 77 Colo. at 146–47, 235 P. at 374.

¶ 41 These precedents rest on the rationale that the attractive nuisance *itself* acts as the invitation to the child to enter on the land. *See Denver Tramway Corp. v. Callahan,* 112 Colo. at 464–65, 150 P.2d at 799–800. The supreme court noted its approval of this concept in *Lovejoy v. Denver & Rio Grande R.R. Co.,* 59 Colo. 222, 225–26, 146 P. 263, 264 (1915):

> The leaving or maintaining of a dangerous and attractive machine, or other instrument or agency upon one's premises, under circumstances which naturally tend to attract or allure young children of immature judgment, and to induce them to believe that they are at liberty to enter and handle or play with it, is tantamount to an implied invitation to enter. Hence a corresponding duty is imposed upon the owner or occupant of the premises to prevent the intrusion, or to protect from personal injury such children as may be so attracted and thus induced to enter, and who are incapable of appreciating the attending dangers. The doctrine is founded upon the principle that when one sets a temptation before young children under circumstances which in law is equivalent to holding out an inducement to enter, he must use ordinary care to protect them from harm. It is but applying the general rule that when one induces or invites another upon his premises, he must use ordinary care to avoid injuring him.

¶ 42 These precedents establish that a child who is enticed to trespass on the land by an attractive nuisance is accorded the preferential treatment reserved in the law for invitees. Thus, we conclude there is no constitutional infirmity in treating such a child preferentially to one in SW's position who is a mere licensee, and we affirm the judgment in landowner's favor.

¶ 43 Because of our conclusion, we need not address landowner's contention that the trial court erred in construing the complaint to assert an attractive nuisance claim.

¶ 44 Judgment affirmed.

Judge ROY concurs.

Judge GABRIEL specially concurs.

Judge GABRIEL specially concurring.

¶ 45 I agree with my colleagues that the district court correctly granted summary judgment to defendant Towers Boat Club, Inc. (the landowner) on plaintiffs' attractive nuisance claim. I respectfully write separately, however, because unlike my colleagues, I would rule on narrower grounds and not reach any of the constitutional issues. *See Developmental Pathways v. Ritter,* 178 P.3d 524, 535 (Colo.2008) (noting that the principle of judicial restraint requires courts to avoid reaching constitutional questions that need not be decided); *People v. Lybarger,* 700 P.2d 910, 915 (Colo.1985) ("Axiomatic to the exercise of judicial authority is the principle that a court should not decide a constitutional issue unless and until such issue is actually raised by a party to the controversy and the necessity for such decision is clear and inescapable.").

¶ 46 Plaintiffs contend that the district court erred in holding that the attractive nuisance doctrine applies only to trespassers, because in plaintiffs' view, it must apply equally to invitees, licensees, and trespass-

ers. If it did not, plaintiffs say, the premises liability statute would allow the type of "inverted hierarchy" that our supreme court found unconstitutional in *Gallegos v. Phipps*, 779 P.2d 856, 862–63 (Colo.1989).

¶ 47 Unlike the majority, I see no reason to decide this issue, or the constitutional questions that it necessarily implicates. Assuming without deciding that plaintiffs are correct and that the attractive nuisance doctrine applies to invitees, licensees, and trespassers alike, plaintiffs' attractive nuisance claim fails as a matter of law for another reason.

¶ 48 It has long been settled in Colorado that for the attractive nuisance doctrine to apply, the attraction must have enticed the child to trespass; it is not enough if the attraction enticed the child only after he or she became a trespasser. *Hayko v. Colo. & Utah Coal Co.*, 77 Colo. 143, 145, 235 P. 373, 375 (1925); *accord Adams v. Warren Analytical Labs., Inc.*, No. 05–cv–01536–EWN–MEH, 2006 WL 3512044, at *5 (D.Colo. Dec.6, 2006); *Denver Tramway Corp. v. Garcia*, 154 Colo. 417, 423, 390 P.2d 952, 956 (1964). Indeed, plaintiffs concede that, even under their view of the attractive nuisance doctrine, the attraction must have enticed the child to enter the landowner's property. Here, however, it is undisputed that the bungee run attraction did not entice SW to enter the landowner's property. Accordingly, even if the attractive nuisance doctrine could be read to apply to invitees, licensees, and trespassers alike, as a matter of law, plaintiffs cannot prevail on their attractive nuisance claim. I would thus affirm the district court's judgment on that narrow ground and not reach the broader and constitutional questions that plaintiffs have raised.